**EDGEWOOD COUNTRY CLUB,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**No. 2438.**

United States District Court
S. D. West Virginia,
at Charleston.

April 28, 1962.

Thomas N. Chambers, Lee O. Hill (Jackson, Kelly, Holt & O'Farrell), Charleston, W. Va., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., John B. Jones, Jr., Acting Asst. Atty. Gen., Edward S. Smith, Lyle M. Turner, Philip R. Miller, Cynthia Holcomb, Attys. Dept. of Justice, Washington, D. C., for defendant.

HARRY E. WATKINS, District Judge.

This is a tax refund suit for the recovery of Federal excise taxes in the sum of $3,335.00, paid to the government on initiation fees for the period from April 1, 1955, through June 30, 1958. Jurisdiction is conferred on this court by Section 7422, Internal Revenue Code of 1954, 26 U.S.C. § 7422 and 28 U.S.C. § 1346, and all jurisdictional prerequisites have been satisfied. The issue to be decided is whether the ownership of stock in the Edgewood Building Association is a condition precedent to membership in the Edgewood Country Club, thus making payments for this stock taxable as initiation fees under Section 4241(a) (2), Internal Revenue Code of 1954, 26 U.S.C. § 4241(a) (2).

Plaintiff, a non-stock, non-profit corporation organized under the laws of West Virginia, conducts a country club, with golf course, tennis courts, swimming pool and clubhouse, in Charleston, West Virginia, and has conducted such a club since 1898. The by-laws of plaintiff in the years in issue provided the following classes of membership: Single, Family, Non-Resident, Associate Class A and Class B, Junior and Honorary. Unmarried men living within thirty-five miles of the City of Charleston were eligible for Single membership. Married men and unmarried men with families living within thirty-five miles of the City of

Charleston were eligible for Family membership. Men living beyond thirty-five miles of the City of Charleston were eligible for Non-Resident membership. Associate Class A membership consisted of those unmarried women having no male member of the family to make application for membership. Widows with families were eligible for Associate Class B membership. Male persons between the ages of 15 and 21, not the sons of members, were eligible to be Junior members. The Governor of West Virginia was eligible for Honorary membership. The by-laws contained provisions governing the election to membership of applicants and imposed substantial initiation fees and annual dues for the various classes. There was also a separate provision in the by-laws exacting additional dues of $25.00 per annum from Single and Family members who did not own a minimum of ten shares of the common stock of the Edgewood Building Association. This provision was the prime mover for the present case and its origin and development merit closer attention.

The Edgewood Building Association (hereinafter referred to as the Association) was incorporated in West Virginia as a for profit corporation in 1906 for the purpose of:

> "Buying, selling, leasing and renting real estate: Building, renting and leasing clubhouses: Laying off golf-links, tennis courts and fields and tracts for athletic sports and games: Supplying clubs and social organization (sic) renting or leasing from this corporation with light, water and other facilities: Renting or leasing any and all grounds or buildings owned or leased by this corporation, and carrying on any business and doing anything, not forbidden by law, necessary, convenient, auxiliary or incidental to such objects and purposes or in connection therewith." (Articles of Incorporation as quoted in the stipulation of the parties to this suit)

The Association is not a social, athletic or sporting club and has been, from its inception, a separate and distinct organization from plaintiff. Since 1907, the Association has leased to plaintiff the land and buildings upon and in which plaintiff has carried on its country club activities. From 1922 to March 13, 1957, the authorized capital stock of the Association consisted of 3500 shares of $50.00 par value, of which 2700 shares were common stock and 800 shares were preferred stock. On March 13, 1957, the authorized capital stock was increased to 4800 shares of $50.00 par value of which 4000 shares are common stock and 800 shares are preferred stock. During the years 1955–1958 no preferred stock was issued and outstanding.

For some time prior to December of 1935 there had been efforts on the part of some persons to corner the stock of the Association with a view toward selling its property. In December of 1935 the principal clubhouse which plaintiff leased from the Association was destroyed by fire. The majority of the Board of Directors of the Association, desiring a more diversified and equitable ownership of Association stock to prevent a cornering thereof, would not agree to apply the fire insurance proceeds toward the building of a new clubhouse unless plaintiff took some steps to assure the desired diversification. Plaintiff took such steps in 1936 by amending its by-laws to require Single and Family members not owning a minimum of ten shares of the common stock of the Association to pay, in addition to regular dues, the sum of $25.00 per annum for ten years, the time to begin in 1936 or upon becoming a member, whichever occurred later. A permanent Stock Subscription Committee was created:

> " * * * to enforce the promises of the members of Edgewood Country Club to purchase the common capital stock of Edgewood Building Association and to supervise the purchase and distribution of said stock; supervise the collection of extra dues assessed against members who do not own ten shares of said stock; to supervise the redistribution of stock

to members, through family connections or otherwise, now held by estates; and generally to supervise, control and administer in every particular the redistribution of said stock."

In response to these efforts of plaintiff, the Association applied the fire insurance proceeds toward the construction of a new clubhouse. The by-laws were amended in 1945 to allow the stock to be in the member's name or in the name of a member of his family or an estate or trust for his benefit, and to require payment of the additional dues by non-stockholders indefinitely. In 1957 the by-laws were again amended to provide that non-stockholders who became members prior to 1945 would only have to pay the additional dues for a period of ten years.

Other than the payment of additional dues, there is no distinction between the stockholding and non-stockholding members of plaintiff. No additional rights, benefits, or privileges are conferred by virtue of ownership of stock, nor are any taken away by the failure to own stock.

During the period in issue, 1955–1958, plaintiff operated with full Single and Family membership (limited by its by-laws to 325 members). It was impossible for every Single and Family member to each own ten shares of the common capital stock of the Association. A number of shares of stock were held by persons not members of plaintiff, and several members of plaintiff owned more than ten shares. There has always been a substantial number of members of plaintiff who do not own stock and who have paid the additional $25.00 yearly dues. Since January, 1957, at least seventeen members of plaintiff neither own stock nor pay additional dues, having been members since prior to January 20, 1945, and having paid the additional dues for at least a ten-year period. At no time has there been a practice on the part of plaintiff or its officers to force or coerce members to acquire stock in the Association.

Plaintiff neither collected nor remitted excise tax on members' purchases of Association stock from the adoption of the by-law requiring its purchase (or, in lieu of purchase, requiring an additional dues payment of $25.00 per annum) until an Internal Revenue audit was concluded in 1958. Upon such audit, it was determined by the Internal Revenue that the amounts paid by members of plaintiff for ten shares of Association stock were subject to the federal excise tax on initiation fees imposed by Section 4241 (a) (2) of the Internal Revenue Code of 1954. At the suggestion of the Revenue Agent by letter of March 3, 1958, plaintiff collected the tax of $3,335.00 asserted to be due from its members and paid it to the government on or about August 29, 1958. On July 17, 1959, plaintiff filed a claim for refund of these taxes. On or about January 18, 1960, plaintiff was notified that its refund claim had been disallowed by the Commissioner of Internal Revenue. This suit was timely filed September 23, 1960.

Section 4241(a) (2) of the Internal Revenue Code of 1954 imposes a tax equivalent to 20 per cent of any amount paid as initiation fees to an organization such as plaintiff. Section 4242(b) defines initiation fees to include:

"* * * any payment, contribution, or loan, required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed, or loaned." 26 U.S.C. § 4242(b).

Plaintiff admits that the statutory definition is broad enough to encompass a purchase of Association stock if paid as a condition precedent to membership in plaintiff. The sole dispute in this case is whether the stock purchase is a condition precedent to membership in plaintiff.

Regulation 43, promulgated under the Internal Revenue Code of 1939, and made applicable to the 1954 Code by T.D. 6091,

**512**

19 F.R. 5167 (the 1954 Code regulation 49.4242–2 defining initiation fees was issued by T.D. 6536) states:

"(b) Under the Code the term 'initiation fees' includes any payment, contribution, or loan required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed, or loaned. It is not material whether the applicant has any hope or expectation of a return of his payment upon resignation, death, or other circumstances, nor is it material to whom he pays the money. For instance, if a golf club requires incoming members as a condition precedent to membership to purchase either from it or from retiring members a share of stock, the tax attaches to any such payment for the stock regardless of the fact that it represents a property interest in the assets of the club. Likewise, if the purchase of a share of stock in a landholding corporation is a necessary precedent to membership in the club, the amount paid for such share of stock is taxable. In the case of a transfer of stock from a retiring member the club should collect the tax on the amount paid by the new member for the stock. * * *"

The government's first premise is that it is not material to the application of the tax that a payment be a prerequisite to all classes of membership in a club; that the essential question is whether such payment is made as a condition precedent for any type of membership therein. Proceeding from this premise the government argues that the classification by which plaintiff has designated its members in its by-laws is not truly representative of the internal division of membership in the club; that the members of plaintiff who own Association stock comprise a separate class of membership regardless of whether they are so designated—a class of Single and Family members who pay $25.00 less dues per annum than do other Single and Family members; that since the ownership of 10 shares of Association stock is a prerequisite to membership in this reduced-dues class, the amount paid for such stock constitutes an initiation fee and is taxable as such.

Plaintiff insists that stock ownership was never intended to be and has not been a condition of membership in plaintiff; that the ownership by-law was entirely motivated by business exigencies as a condition of its lease from the lessor-Association; that what is a " * * * condition precedent to membership * * *", within the Congressional scheme of things, must be determined in light of these factors of motivation and intent. In short, plaintiff says that it is necessary to look at the origin and function of the club by-law and the purpose of the statute as aids in the construction and application of the definitive phrase in issue here. While conceding that a club's own membership classifications may not be binding in all instances, plaintiff further argues that there are no distinctions of substance to justify the government's sub-division of the established classes in this case.

■ To resolve this question it is important that we look first to the history of the excise tax statute. The first excise tax on dues or initiation fees was imposed in 1917. At that time the statute provided for a " * * * tax equivalent to ten per centum of any amount paid as dues or membership fees (including initiation fees)" without further definition. Revenue Act of 1917, c. 63, § 701, 40 Stat. p. 319. The Treasury Regulations promulgated under this act provided that "The tax is 10 per cent of any amount paid as dues or membership fees (including initiation fees and any payments required for becoming or remaining a member). * * *" Treasury Regulation 43, Art. XX.

In 1918 the statutory provision was amended to apply the tax on amounts paid

as dues " * * * or (b) as initiation fees to such a club or organization, if such fees amount to more than $10 * * *." Revenue Act of 1918, c. 18, § 801, 40 Stat. p. 1121. Treasury Regulation 43, Part 2, Art. 10, promulgated in 1921, provided in part:

"The term 'initiation fee' includes any payment to the club required for becoming a member, whether evidenced by a certificate of membership or a share of stock in the club or not. Thus, it includes amounts paid to such clubs or organizations for stock where the purchase of such stock is required as a prerequisite of membership. * * *"

In response to a contention that the tax was inapplicable where there was more than one class of membership, the Treasury Department made its position clear in S.T. 387, I–2 Cum.Bull., 291 (1922):

"A taxpayer contends that the amount paid for a certain membership is not a condition precedent to becoming a member of the club but only to becoming one of that particular class of members known as 'corporate members'. Section 801 does not impose the tax only upon a uniform and general initiation fee which is a condition precedent to becoming a 'member' of the club. That section levies the tax upon 'any amount paid * * * (b) as initiation fees . * * *' to a social, athletic or sporting club or organization. *In other words, it is not material to the application of the tax that payment be a prerequisite to all classes of membership in the club. The essential question is whether such a payment is made as a prerequisite for any type of membership therein."* (Emphasis supplied.)

This position is certainly a reasonable one. If the tax only applied to those payments made as conditions precedent

to becoming a general member of the club, the tax could easily be avoided, and a significant source of revenue closed, by having different classes of membership within the general membership and imposing major initiation fees for those classes, with only token fees, or none at all, for general membership. The position announced in 1922 has remained unchanged and has quite properly received implied Congressional approval through the absence of a statutory alteration thereof. In Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52, the court said:

"Treasury regulations and interpretations long continued without substantial change, applying to unamended or substantially reënacted statutes, are deemed to have received congressional approval and have the effect of law."

The point was just recently passed on in McDonald v. United States, E.D.Ky., 196 F.Supp. 415 (1961). Under the articles of incorporation of the Idle Hour Country Club it was provided that the purchasers and holders of the club's first mortgage bonds would be entitled to a certificate of membership which entitled the holder to all the privileges of the club, subject to the club's by-laws. It was also provided that certificates of membership could be issued from time to time and for such consideration as the board of governors might determine. Under the by-laws five other classes of membership were created.[1] Other pertinent facts appear in the following statement of the court:

"In view of the clear provisions of the Articles of Incorporation of the club limiting voting rights and all interest in the property and assets of the corporation to owners and holders of certificates of membership and vesting exclusive management and control of the affairs of the club in a Board of Governors, each of

---

1. This information does not appear in 196 F.Supp., but is contained in the by-laws which were attached to and made a part

of the official opinion which was filed in the case.

whom 'must be the owner and holder of a certificate of membership', who are elected annually by holders of certificates of membership, and the fact that certificates of membership according to Stipulation No. 6 have never been issued to persons other than holders of First Mortgage Bonds, the conclusion seems inescapable that each of the bonds is a loan and a condition precedent to complete membership.

"The * * * contention that the provisions of Article VI to the effect that certificates of membership may be issued from time to time for such consideration as the Board of Governors may determine and that the Board of Governors may elect other classes of membership with no voting rights, no voice in the management and control of the corporation, and no interest in its property or assets rendered inapplicable the above provisions of the Code * * * seems untenable." 196 F.Supp. at p. 418.

Thus, the court held that the bonds were a condition precedent to membership in the club, even though other classes of membership were provided in the by-laws. Clearly the condition does not have to be a precedent to all classes of membership in a club. The government is correct in its first contention that it is not material to the application of the tax that a payment be a prerequisite to all classes of membership in a club. The essential question, still to be determined here, is whether such payment is made as a condition precedent for any type of membership therein.

As noted earlier, the first statutes on the subject contained no definition of the term initiation fees, although the Treasury Regulations had defined the term to include the purchase of a share of stock or bond as a condition precedent to membership. In this atmosphere litigation developed which held the Regulations invalid. Alliance Country Club v. United States, 62 Ct.Cl. 579; Page v. United States, 62 Ct.Cl. 590; Lukens v. United States, 62 Ct.Cl. 598; See also, Masonic Country Club of Western Michigan v. Holden, 6 Cir., 18 F.2d 553 (1927). It was against this background that Congress amended the law in the Revenue Act of 1928, c. 852, § 413, substantially into its present form, 26 U.S.C. § 4242 (b) supra, and thereby validated the definition of initiation fees as found in Treasury Regulation 43, Art. 10, supra. In explaining the provision, the Report of the House Committee on Ways and Means, H.Rep. No. 2, 70th Cong., 1st Sess., p. 26 (1939–1 Cum.Bull. Part 2, 384,401) stated:

> "It has been found that the tax * * * on initiations is being evaded by requiring the purchase of a share of stock or a bond. It is provided * * * that the term * * * 'initiation fees' includes any payment, contribution, or loan required as a condition precedent to membership, whether or not evidenced by a certificate or share and regardless of the person or organization to whom it is paid, contributed, or loaned."

A similar statement was contained in the Report of the Senate Committee on Finance, S.Rep. No. 960, 70th Cong., 1st Sess., p. 34 (1939–1 Cum.Bull. Part 2, 409, 433).

■■ Plaintiff argues that an examination of the Congressional policy behind the statutory definition is necessary to see if that definition applies to this case. This is correct. But it is only half of plaintiff's argument. The argument continues by asserting that the Congressional policy behind the definition was to require an examination of the motives and intent underpinning a particular plan as determinative of its taxability. This is incorrect. If the stock ownership plan itself constitutes a condition precedent to membership in a particular class of plaintiff, then the tax falls on payments for that stock, notwithstanding the fact that the plan, in its inception and continuing operation, was for valid business reasons entirely disassociated from the thought that it

should operate as a condition precedent to membership. The existence of a condition precedent to membership in plaintiff is determined from the plan itself, independent of the intent of the parties. By providing the definition of initiation fees in Section 4242(b), Congress clearly intended to tax payments which were necessary prerequisites to membership in a club, which payments, in the absence of the statute, would be untaxable. The definitive phrase "condition precedent to membership" need not be strained to be understood. It simply means, that without which membership is impossible, be it stock ownership, age, marital status, or location of one's home. There is no indication of a Congressional dictate that the creator's intent should be controlling as to the taxable amenability of that which was created, and such a dictate may not reasonably be read into the statute.

■ Another argument which plaintiff makes is that the purchases of stock could not be initiation fees because such fees are placed on incoming members and all the purchasers in this suit were already members when they bought stock. There is no requirement in the statute that a fee, to fall within the definition, must be a fee on an incoming member and such an interpretation would be unreasonably restrictive. A payment which thereby entitles a member to move from one class of membership to another ·is just as much an initiation fee as is the payment made by a neophyte who desires initial membership. All the cases in this area cited by the parties have been concerned with some issue arising out of a stock purchase by a new member. But none of these cases has even suggested that no taxable event occurs if the stock purchase is made by one already a member to become eligible for another class of membership.

■ As a final argument against denominating stock purchases as initiation fees, plaintiff says that the purchases do not perform the functions of an initiation fee, by bringing in new capital for the club or enlarging or improving it.

These may very well be some functions of initiation fees, but they are not functions required by the statute. The statutory function, which is controlling here, is that the payment be, " * * * required as a condition precedent to membership * * *." If that is satisfied, then the payment is an initiation fee, and its subsequent economic disposition is irrelevant.

■ With this preliminary discussion, I now return to the original question as to whether stock ownership is a condition precedent to membership in plaintiff. It is clear that a person may become a member of many classes of plaintiff without owning stock. But it is equally clear that a Single or Family member of plaintiff must own 10 shares of Association stock before being entitled to pay $25.00 less dues per annum than other members of the club. Since it is undisputed that there is no other distinction between owners and non-owners, is the element of reduced dues sufficient to create a class within two classes, i. e., a class of Single and Family members who pay $25.00 per year less dues than do other members? If a separate class is formed then stock ownership is an imperative for membership therein, and payments for this stock are taxable as initiation fees.

The Treasury Department was asked to rule on· an issue similar to this one in Rev.Rul. 281, 1953–2 Cum.Bull. 344. There a country club had four classes of membership, but only those members who purchased a share of stock or a certificate of interest could vote in the management and control of the club and share in its assets. The ruling stated in part:

"*Held,* those members who are entitled to vote in the management and control of the club and share in its assets comprise an additional or separate class of membership, regardless of whether specified as such, and any amount paid for a share of stock or certificate of interest constitutes an amount paid as a condition precedent to membership of that class and is subject to the tax on initiation

fees imposed by section (the 1939 Code equivalent to Section 4241(a)(2) of the 1954 Code)."

In the Matter of Riverlake Country Club, Inc., N.D.Tex., 61–2 U.S.T.C., par. 15,357, 203 F.Supp. 442 (appeal pending to the Fifth Circuit Court of Appeals), was a proceeding under Chapter XI of the Bankruptcy Act in which the club had filed a petition for an arrangement. The pertinent facts were that the club had an initiation fee of $400.00 for resident members and $50.00 for non-resident members; however, those persons who purchased one of the club's debenture bonds for $1,000.00 (payable in 2 years with 6 percent interest) were entitled to receive at no additional charge a dues paying resident or non-resident membership in the club. A person could thereby acquire membership by loaning the club $1,000.00 to be evidenced by a bond which was repayable in 2 years with 6 percent interest a year, or he could acquire membership by making a non-returnable payment of $400.00 for a resident membership, or $50.00 for a non-resident membership. Thus, bond holders were required to pay no initiation fee upon joining the club. There was no other material difference between the memberships. In the bankruptcy proceeding, the United States filed a claim for excise taxes using the same theory which it employs here, i. e., that although other types of membership were available, the bondholding members comprised a separate class whose distinguishing characteristic was the payment of no initiation fee; that the condition precedent for membership in this class was the purchase of a club bond; that, therefore, the price paid for this bond constituted an initiation fee for membership in that class and was taxable as such.

The Club admitted it owed the 20% excise tax on each $400.00 and $50.00 initiation fee, but denied owing excise tax on each $1,000.00 bond. The Referee, and the district court on petition for review, agreed with the Club's contention on the theory that, the value of what the purchaser received in the way of Club membership was $400.00 if he took a resident membership, and $50.00 if he became a non-resident member.

While the facts of Riverlake are quite different, I am unable to distinguish Riverlake in any material respect from the case at bar, and respectfully disagree with the conclusion there reached. At most Riverlake should be strictly limited to its facts. In Riverlake there were other classes of membership who paid initiation fees of $400.00 and $50.00. There was a substantial portion of the membership (of 292 bond purchasers, 279 received dues paying memberships in the club) who paid no initiation fees at all. For this privilege of membership without payment of an initiation fee, the purchase of a $1,000.00 bond was required. The Referee and the Court upheld a 20% tax on either $400.00 or $50.00 of that purchase price, and refused the tax as to the rest of the purchase price. There is no authority in the statute for basing the tax on initiation fees on the value of that which is received for the payment of the initiation fee. If the bondholders received a value of $400.00 or $50.00 by purchasing a bond, they received this value by paying, not $400.00 or $50.00, but $1,000.00. The payment of $1,000.00 was a condition precedent to membership, and such payment of $1,000.00 was, therefore, by the terms of the statute, an initiation fee and the full amount thereof is taxable as such initiation fee. Under the principle of this case, a club might set a low initiation fee and issue bonds for a substantial price, and only that portion of the purchase price of the bond which was equivalent to the low initiation fee would be taxable as an initiation fee so long as no subterfuge could be shown. To require such a showing before a tax could be collected on the balance would certainly be an onerous, and probably impossible, task for the tax collecting authority, especially since there might be some very valid business reasons, apart from tax evasion, for such a construction of fees. The Referee also based his decision on the fact that the

purchase of a bond was only one means of attaining membership, and was not a prerequisite to membership in the club. This conclusion would seem to run counter to the principle that initiation fees for various classes of membership, as well as general initiation fees, are covered by the tax.

Plaintiff argues that the privilege of paying less dues is not sufficient to justify the creation of a separate class of membership. Eligibility for membership in the classes which plaintiff has established in its by-laws swings on such things as age, marital and familial status and distance of one's residence from the City of Charleston. The standard of reduced dues is a classification at least equal to these. And it is reasonable to believe that the privilege of paying less dues would be, as a practical matter, valued higher than the right to vote in the management and control of the club and the right to share in its assets. The latter right is of questionable value since these clubs are usually non-profit and the only sharing of assets would be upon liquidation. People join country clubs to enjoy the continued existence of these clubs, and not in order to participate in the liquidation of their assets.

Here we have Single and Family members of plaintiff with all the privileges of the country club that other members have, plus one more—an economically compelling one—reduced dues. These stock-owning members of an exclusive country club save $25.00 a year dues or $250.00 in 10 years, or even more if they joined after 1945 (since non-owning members who joined after 1945 must pay the extra $25.00 indefinitely). Most of the members against whom this tax was assessed joined the club after 1945 and, by purchase of 10 shares of stock at $40.00 per share, an investment of only $400.00, have saved and will continue to save $25.00 per year in dues indefinitely. A member joining the club in 1946, and

purchasing stock in that year, has already saved $375.00. Although the par value of ten shares of stock was $500.00, the members against whom this tax was assessed paid only $400.00 for their stock (Stipulation, par. 19). This most certainly is a valuable membership right and is sufficient to set the stockholder-members apart as a separate class of membership. There is only one way to join this class and that is to own 10 shares of Association stock. Payments for that stock are, therefore, conditions precedent to membership and are taxable as initiation fees under Section 4241 (a) (2) of the Internal Revenue Code of 1954.

The facts that other substantial initiation fees are paid and that many non-members of plaintiff own Association stock do not defeat the tax. See Vitter v. United States, 5 Cir., 279 F.2d 445 (1960). The tax is levied on the payments made for 10 shares of Association stock by Single and Family members of plaintiff. It is immaterial that all members cannot own 10 shares; that some own more than 10 shares; that since January, 1957, 17 members of plaintiff neither own stock nor pay the extra dues of $25.00 per year, or that initiation fees have been increased from time to time.

It is the judgment of this court that the 1936 by-law of plaintiff created a separate class of membership—a class of Single and Family members who pay $25.00 less dues per year than do other Single and Family members; that a condition precedent to membership in this class is the ownership of at least 10 shares of stock of the Edgewood Building Association; that payments for such stock are therefore taxable as initiation fees. Judgment in this refund suit is therefore entered for the United States.

The foregoing is adopted as the findings of fact and conclusions of law of this court.