Loyd R. HARVEY, Alvin H. Newman, Lynn H. Durham, E. C. Prichard, C. Ran Turner, Harry G. Burrell, Plaintiffs,

v.

UNITED STATES of America, Defendant.

C. A. 568.

United States District Court
W. D. Virginia,
Danville Division.

Sept. 15, 1964.

John Y. Merrell, Washington, D. C., and T. Ryland Dodson, Danville, Va., for plaintiffs.

Thomas B. Mason, U. S. Atty., Roanoke, Va., for defendant.

MICHIE, District Judge.

This is a suit for the recovery of federal excise taxes and interest paid by the plaintiffs between August 4, 1961 and March 19, 1962 upon assessments by the Internal Revenue Service under 26 U.S.C. § 4241 (1954).

The issue to be decided is whether the purchase and ownership of shares of stock in Laurel, Inc. is a condition precedent to membership in Tuscarora Country Club, hereinafter called "Tuscarora", thus making payments for the stock taxable under 26 U.S.C. § 4241(a) (2).

There is no real conflict of facts, these having been determined from uncontradicted testimony and a stipulation. In June, 1957, a group of citizens of Danville, Virginia, formed a corporation, Laurel, Incorporated, hereinafter called "Laurel", for the purpose of providing some sort of "recreational facilities" which purpose contemplated a country club-like operation. See transcript of the hearing of April 24, 1964. In furerance of its corporate designs Laurel acquired a tract of property in September, 1957. Laurel's certificate of incorporation authorized it to issue 400 shares of common stock at a stated par value of $250 per share and it was offered for sale and sold with no restrictions as to resale. Laurel then began construction

in late 1957 of a golf course, a swimming pool and a country club building. About the same time plans were made to develop some of Laurel's land for building lots and to offer these lots for sale. In March, 1958 Tuscarora Country Club was incorporated as a nonstock corporation to operate country club facilities on a nonprofit basis. Tuscarora entered into a lease agreement with Laurel to rent and operate the facilities Laurel was constructing.

Tuscarora established a membership program with an initiation fee of $250. Article IV, Section 14 of its by-laws provides:

"Notwithstanding the other provisions of Article IV, any stockholder of Laurel, Incorporated, may become a member of the Club without paying initiation fees, provided he pays the dues designated by the Board. However, once a member, all the other provisions of these By-Laws apply to him the same as any other member. Stockholders of Laurel, Incorporated, shall lose membership in the Club upon sale of stock."

Although this provision indicates that holders of Laurel stock will be admitted to membership upon application as a matter of right, the testimony of Loyd Harvey (Tr. 6, 13) reveals that not to be the case. He stated that some Laurel shareholders were denied membership in Tuscarora. Applicants for membership not holding shares in Laurel were required to pay the $250 initiation fee.[1] All members, no matter what their mode of entrance to the club, were required to pay dues.

As of November 1, 1963 Laurel had 388 shares of capital stock outstanding, with 369 shareholders. Of these 369 shareholders 352 held only one share of stock, fifteen held two shares of stock and two held three shares of stock. 283 shareholders of Laurel were members of Tuscarora and 34 non-shareholders were members of Tuscarora.

There are six plaintiffs in this case, all but two of whom purchased stock in Laurel solely in their own names. Loyd R. Harvey purchased his share of Laurel in the name of a partnership, Harris and Harvey. C. Ran Turner was admitted to membership through the share of Laurel purchased by the Virginia Bank and Trust Company, of which Turner was an officer. All the shares through which the six plaintiffs were admitted to membership in Tuscarora were purchased for $250.[2]

The plaintiffs argue that the purchase of stock in Laurel was a voluntary investment in a profit making corporation and not the equivalent of the payment of an initiation fee to Tuscarora Country Club.

The government contends that 26 U.S. C. § 4241 (1954) provides for an excise tax of twenty percent on any initiation fee paid to certain clubs and that Tuscarora Country Club's initiation fee of $250 is thus taxable. The government further contends that under 26 U.S.C. § 4242(b) (1954) the payment of $250 to Laurel as the purchase price of a share of stock was a condition precedent to a class of membership in Tuscarora.

I must agree with the government's contention.

The pertinent parts of the Internal Revenue Code of 1954 are as follows:

"§ 4241. Imposition of tax

1. A practice developed whereby applicants for membership could be admitted under waiver of initiation fees without owning or holding shares in Laurel. Some owners of Laurel stock held more than one share and used their extra shares to admit applicants under the cover or auspices of those extra shares. People admitted in this manner never actually owned or held the shares sponsoring them.

2. Sometime in 1960 the purchase price of Laurel shares was raised to $300. Testimony indicated the increase was because, "We thought we could get more money. We had more to offer." In 1960 the swimming pool and nine holes of the golf course had been completed.

"(a) Rate.—There is hereby imposed—

"(1) Dues or membership fees. —A tax equivalent to 20 percent of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year.

"(2) Initiation fees. — A tax equivalent to 20 percent of any amount paid as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $10 per year.

\* \* \* \* \* \*

"(b) By whom paid.—The taxes imposed by this section shall be paid by the person paying such dues or fees, or holding such life membership."

"§ 4242. Definitions

"(a) Dues.—As used in this part the term 'dues' includes any assessment, irrespective of the purpose for which made, and any charges for social privileges or facilities, or for golf, tennis, polo, swimming, or other athletic or sporting privileges or facilities, for any period of more than six days; and

"(b) Initiation fees.—As used in this part the term 'initiation fees' includes any payment, contribution, or loan, required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed, or loaned."

A review of the history of the club excise tax statute is informative. But in view of Judge Watkins' very able opinion in Edgewood Country Club v. United States, 204 F.Supp. 508 (S.D. W.Va.1962), aff'd, 310 F.2d 379 (4th Cir.1962), a case directly in point, wherein he traces the history and development of the tax, I do not feel such a review necessary.

However, I cite the following regulation:

Treasury Regulation on Facilities and Services Excise Taxes (1954 Code):

"§ 49.4242–2 DEFINITION; INITIATION FEES

"The term 'initiation fees', as used in the regulations in this part, includes any payment, contribution, or loan required as a condition precedent to membership in a social, athletic, or sporting club or organization, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed or loaned. It is immaterial whether the applicant has any hope or expectation of a return of his payment upon resignation, death, or other circumstances, nor is it material to whom he pays the money. For instance, if a golf club requires incoming members, as a condition precedent to membership, to purchase either from it or from retiring members a share of stock, the tax attaches to any such payment for the stock regardless of the fact that it represents a property interest in the assets of the club. Likewise, if the purchase of a share of stock in a landholding corporation is a necessary precedent to membership in the club, the amount paid for the share of stock is an initiation fee. In the case of a transfer of stock from a retiring member, the amount paid by the new member for the stock, as well as any transfer fee required from the new member, is an initiation fee."

Despite the plaintiffs' vigorous attempt to distinguish the Edgewood case, I believe it to be clearly in point. The facts

in Edgewood are somewhat similar to those in the case at bar. A West Virginia country club founded in 1898 had developed several classes of membership. In 1906 a separate and distinct corporation called Edgewood Building Association was founded. This was a stock company created for profit making purposes and shares in it were sold. The Association leased to the club the land and buildings for the club's use. In 1936 the Association required members not owning ten or more shares of Association stock to pay additional dues over and above those paid by members owning ten or more shares of such stock. The plaintiff contended, as do the plaintiffs in the case at bar, that the ownership of the Association stock was not a condition precedent to membership in the club but was motivated instead by "business exigencies".[3] Judge Watkins found that the members paying reduced dues created a special class within the club and that ownership of the ten shares in the Association was a condition precedent to membership in that class; that payments for such stock are therefore taxable as initiation fees.

The case at bar presents a similar situation. The owners or holders[4] of Laurel stock are given a special concession; that of being admitted to membership without paying initiation fees. Those so admitted create a special class of membership: those not required to pay initiation fees. Those members who were required to pay the initiation fee constitute another class.[5] The plaintiffs' contention that there is only one class of members is without merit.

The crucial question to be decided is whether ownership of Laurel stock is a condition precedent to membership in Tuscarora of any class. I think that it is. It is a condition precedent to that class of membership which has been admitted without paying an initiation fee.

The plaintiffs contend that ownership in Laurel is not a condition precedent to membership in Tuscarora. They argue that the original purchasers of the stock did so for profit motives. They cite Laurel as a profit making corporation and its shareholders as capital investors in real estate. They note the distinct separation of the stock corporation from the club and Laurel's leasing arrangement with the club. They urge that because Tuscarora "gratuitously" chose to waive the initiation fees for the Laurel shareholders there should be no finding that the purchase was a condition precedent for that waiver. They add that the waiver could be withdrawn at any time by a simple two-thirds vote of Tuscarora's members.

Plaintiffs strongly contend that it was not the intent of the original purchasers of Laurel stock to use their stock as a vehicle to avoid an initiation fee (and tax thereon) in a subsequently formed club. That may very well be the case. But a determination of whether such ownership is a condition precedent does not rest on the intent of the parties. This argument was disposed of in the Edgewood case. If the purchase of some stock, without any contemplation of the occurrence of some later collateral benefit such as occurred in this case, sub-

---

3. The business exigencies in the two cases are different. In Edgewood the Association required as a term of providing the club with certain facilities that the club make some rule about the purchase of the stock. The club then made a special membership class by lowering dues for those members who were holders of ten or more shares of the Association stock. In the case at bar the business reason alleged was profit making by Laurel not only in the returns of rent and profit from the lessee club but from cer-

tain other ventures of Laurel including housing development and acreage rental.

4. Plaintiff Turner creates a special problem. He does not own nor is he a holder of a share in Laurel. His employer, a bank, purchased the share through which he was admitted to membership. The government concedes that the tax is not assessable against him but is against the bank.

5. The 34 non-shareholding members of Tuscarora as of 11/1/63.

sequently *becomes* by some later action a condition precedent to a class of membership in a club (within the contemplation of § 4241), for whatever reason, it comes within the purview of the excise tax. Judge Watkins' language is clear:

"If the stock ownership plan itself constitutes a condition precedent to membership in a particular class of plaintiff [club], then the tax falls on payments for that stock, notwithstanding the fact that the plan, in its inception and continuing operation, was for valid business reasons entirely disassociated from the thought that it should operate as a condition precedent to membership. The existence of a condition precedent to membership in plaintiff [club] is determined from the plan itself, independent of the intent of the parties." 204 F.Supp. at 514–515.

See also Treasury Regulation § 49.4242-2, supra. The plaintiffs further attempt to avoid the thrust of the Edgewood case by arguing that in Edgewood the investment corporation was created after the country club while in the instant case the reverse is true. But a careful reading of the language cited above in the Edgewood decision obviates that distinction.

Hence those who purchased stock before the creation of the club without intent to gain admission to the club through their stock and those who purchased subsequently stand in the same class of membership; those admitted to membership without paying the $250 initiation fee.

The plaintiffs rely on Ship Cabin Club, Inc. v. Crenshaw, 199 F.2d 594 (4th Cir. 1952) in support of the contention that the purchase price for the Laurel stock was something akin to a contribution to capital and therefore not under the excise tax. But the Ship Cabin case is not remotely in point. There the case did not deal with membership requirements or conditions precedent but with monies paid to the club by its eight members. The only thing remotely resembling a condition precedent, the cost of the shares originally starting the club, was not considered.[6]

The plaintiffs further argue that in the event I find that the excise tax can be imposed on the purchasers of Laurel shares that the tax cannot be imposed prior to the date of their "initiation" into membership in Tuscarora.[7] As there may be some time between a member's selection into membership and his "initiation", I believe the term "admission" or "election" would be better.

In Munn v. Bowers, 47 F.2d 204 (2d Cir. 1931), cert. denied, 283 U.S. 845, 51 S.Ct. 492, 75 L.Ed. 1454 (1931), the court considered a somewhat similar case to the one at bar. In Munn the club required prospective members to purchase certain stock as a condition precedent to election to membership. Purchase of the stock did not assure the applicant of admission. The court was applying essentially the same statute then as is in force now.[8] With respect to the time of the imposition of the tax the court said at 47 F.2d p. 205:

"The tax imposed by this statute is an excise on the privilege of joining a club of a designated character; the measure being 10 per cent of the amount paid as initiation fees. To impose the tax, the member must exercise the privilege of joining the club. The tax falls upon him for such privilege, and

6. The eight members each owned one of the eight shares in the club. There were no other shares or members. No other members were sought. The monies paid to the club were for its maintenance.

7. This is argument II of the plaintiffs' brief. Strangely, the government never answers nor even notes this argument in its brief.

8. The principal difference being a ten percent increase in the rate; from ten to twenty percent.

he may escape it by not joining. The tax is incapable of apportionment. The obligation to pay an excise tax is usually based upon the voluntary action of the person taxed either for enjoying the privilege or engaging in the occupation which is the subject of the excise, and the element of absolute and unavoidable demand as in the case of property tax is lacking." [9]

I am not able to find more recent authority but the reasoning cited is quite persuasive. The logic is inescapable. If the tax is an excise on payments in the nature of initiation fees then the tax cannot be levied until the actual initiation fee is imposed on the taxpayer. If the purchaser of a share in Laurel never chooses to use his share as an entree to Tuscarora, certainly no tax under § 4241 could be imposed. It follows, therefore, that the tax does not become assessable and thus due until the shareholder chooses to become a member of Tuscarora and is accepted. The tax becomes due when the initiation fee becomes or would have become due. That is when the cost of the share becomes the value of the initiation fee and not before.

Argument III of the plaintiffs' brief concerns itself with the question whether an individual who neither paid an initiation fee to Tuscarora nor owned a share of stock in Laurel could be taxed under § 4241. Two of the six plaintiffs come under this question. Loyd R. Harvey was admitted to membership on the share in Laurel purchased by the partnership of Harris and Harvey, of which Harvey is a partner. The partnership purchased the share in 1957 and Harvey was admitted to membership to Tuscarora in 1958. For purposes of federal taxation partnerships are not in themselves taxable entities. The taxation is on the individual partner on his distributive share of the partnership. Under the theory of individual tax liability it seems reasonable to conclude that the benefit of the purchase of one share in Laurel inured to Harvey as an individual and not to the partnership.[10] Harvey, then, should pay the excise tax on the $250 share of stock. C. Ran Turner, the other plaintiff who falls under this question, was admitted to membership through the share purchased by his employer, Virginia Bank and Trust Company. The claim against him by the government is mooted by the government's admission that the tax was incorrectly assessed against him. His employer, the bank, is not a party to this suit and any possible liability on its part cannot be adjudicated herein.

Therefore, it is the judgment of this court that the purchase of stock in Laurel was a condition precedent to a class of membership in Tuscarora—those not required to pay the $250 initiation fee; that payment for the stock by those stockholders who became members of the club is therefore taxable under § 4241 as an initiation fee as of the time they became members. Judgment will be entered accordingly against the plaintiffs, with the exception of C. Ran Turner, who does not own the stock by virtue of which he became a member of the club, and for the government.

9. Although Judge Hand dissented from the majority opinion he did not dissent from this section.

10. The benefit is as to membership in Tuscarora and is not as to any value with respect to Laurel.