**MASON'S ISLAND YACHT CLUB, INC.**

v.

**UNITED STATES of America.**

**Civ. No. 10740.**

United States District Court
D. Connecticut.

Dec. 8, 1967.

Ralph P. Dupont, New London, Conn., for plaintiff.

John F. Mulcahy, Asst. U. S. Atty., Hartford, Conn., Edward J. Snyder, Department of Justice, Washington, D. C., for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BLUMENFELD, District Judge.

This is a suit for refund of excise taxes assessed by the Commissioner of Internal Revenue at the rate of 20% on the first $2500 [1] of the prices paid by each of 13 members of the Mason's Island Yacht Club (hereinafter the "club") for parcels of real property on Mason's Island individually acquired by them. These properties were acquired between 1958 and 1962 at prices ranging from $2500 to $45,000. The ground for imposition of the tax in dispute is that such payments were paid as initiation fees to the club. The applicable statute is:

"§ 4241. Imposition of tax

"(a) Rate.—There is hereby imposed—

* * * * * *

"(2) Initiation fees.—A tax equivalent to 20 percent of any amount paid as inititaion fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $10 per year." (26 U.S.C., 1964 ed).[2]

Both parties have stipulated to the facts, all of which are incorporated here by reference but need not be stated at length. Both parties have moved for summary judgment.

The club was incorporated under Connecticut law in 1928 as a non-profit corporation, without capital stock. It is situated on Mason's Island, Mystic, Connecticut. The club is a "social, athletic, or sporting club or organization" within the meaning of § 4241(a) (1) of the Internal Revenue Code of 1954, as amended.

Initiation fees for all members were $150 until September 1961 when they were raised to $200. Annual dues were $52 for Active members and $65 for Associate members.

The club is located on a peninsula at the southeast corner of Mason's Island. The parcels of land owned by the taxpayers are all within a certain area comprising about two-thirds of the southern part of the island, described in the club's by-laws (Sec. 4(a)) as laying "south of an approximate east-west line from the gate-way at the north end of the Mason's Island Company's main road. * * *"

The club's laws provide only for family memberships. Memberships in the club are divided into two classes—Active and Associate. To be eligible for Active membership "at least one member of each new Active member family shall be the owner of real property * * *" within the 4(a) Section. Owners of property outside of the Sec. 4(a) area are eligible only for Associate membership. Associate members are limited to 45.

There were at all times pertinent to this action approximately 74 families living south of the gate-way and holding Active memberships. One Active member lives on Mason's Island outside the Sec. 4(a) area. This family has held its membership since 1941, which was before the club's laws were changed to limit Active memberships to the area south of the gate-way. Forty-five families hold Associate memberships. They all live north of the gate-way.

The property on Mason's Island owned by the Active member families (or owned by some member or members of the Active member families) was once owned and sold by the Mason's Island Company, an independent corporation, with 10 to 12 exceptions.

The island had been owned by the Mason family. The Mason's Island Company bought most of the land from the Mason family or from others who had acquired it from the Mason family. The

---

1. The taxes in dispute were paid by 13 members to Mason's Island Yacht Club. The club acted as an agent for the collection of the taxes on their behalf and has permission to bring this action for refunds.

2. Repealed, Act of June 21, 1965, Pub.L. No. 89–44, Title III, § 301, 79 Stat. 145.

last member of the Mason family died in 1917. Before he died, he sold 10 to 12 lots to people who had leased the lots from him. Thus, of the families living within the Sec. 4(a) area, possibly as many as 12 own property which was not once owned by the company. Some, and possibly all, of these families hold Active memberships in the club.

There have been 12 Active member families who bought their property from families who were not members of the club. There probably have been Active member families who sold their property to families who did not subsequently become members of the club.

The club itself has never owned any property on the island now owned by the member or non-member families.

The Mason's Island Company still owns land on the island both within and without the Sec. 4(a) area, and has at all times offered these properties for sale.

So far as appears, persons purchasing property anywhere on Mason's Island do so independently of the club. Such transactions are strictly between the seller and buyer, and the club is neither directly nor indirectly a party to any such conveyance. Membership in the club is not involved in such conveyances. Finally, the club apparently owns no property on Mason's Island other than the area occupied by it and conveyed 'to it by Mason's Island Company between 1928 and 1961. The club does not require prospective members to purchase or acquire any interest in the club's real estate.

The ownership of property south of the gate-way is never tantamount to Active membership in the club. In point of fact, on the dates in issue here, there were approximately 38 families living within the area south of the gate-way on Mason's Island, the so-called Sec. 4(a) area, who were not members of the club.

## Issue

The question to be decided is whether part of the payment for residential property in the 4(a) Section was subject to the tax on initiation fees.

The taxpayers contend that unless the payment was made "as initiation fees to such club or organization" it does not fall within the ambit of § 4241(a) (2) and is not subject to the tax.

Section 4242(b) defines initiation fees:

"(b) Initiation fees.—As used in this part the term 'initiation fees' includes any payment, contribution, or loan, required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed, or loaned." (26 U.S.C., 1964 ed.).[3]

The purpose behind the definitional portion of the act, they argue, was to frustrate attempts to evade the tax by casting a payment of initiation fees in the disguise of a stock purchase, a loan, or some other imaginative transaction. The Report of the House Committee on Ways and Means, H.R.Rep.No. 2, 70th Cong., 1st Sess., 26 (1939–1 Cum.Bull. Part 2, 384, 401) states the problem which § 4242 (b) was enacted to overcome:

"It has been found that the tax * * on initiations is being evaded by requiring the purchase of a share of stock or a bond. It is provided * * that the term * * * 'initiation fees' includes any payment, contribution, or loan required as a condition precedent to membership, whether or not evidenced by a certificate or share and regardless of the person or organization to whom it is paid, contributed, or loaned."

See also Report of the Senate Committee on Finance, S.Rep.Doc.No. 960, 70th Cong., 1st Sess., 34 (1939–1 Cum.Bull. Part 2, 409, 433).

The government on the other side rests on a claimed literal reading of the definitional statute to support its position that any payment required as a condition precedent to membership without regard

3. Also repealed, see n. 2.

whatsoever to the purpose for which paid is taxable. The net of the language is cast over a multiplicity of conditions precedent to membership, but Courts have repeatedly been warned: "There is no surer way to misread any document than to read it literally," Gemsco, Inc. v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945); see also Federal Maritime Comm. v. DeSmedt, 366 F.2d 464, 469, 470 (2d Cir.) cert. denied, 385 U.S. 974, 87 S.Ct. 513, 17 L.Ed.2d 437 (1966). That admonition fits here.

Nor is it inapplicable because of the rule in § 7701(b) of Title 26:

"The term 'includes' * * * when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined."

The statutory purpose must still be determined.

It is obvious that any eligibility qualification for membership is, as well, a condition precedent to membership. And the list of possible categories of qualifications which can be obtained only at considerable cost staggers the imagination. For example, ownership of a sports car as a prerequisite to joining a racing club, possession of a post-graduate degree to join a professional club, or ownership of residential property in a certain geographic area to join a golf or swimming club, all would entail considerable expense to meet the usual qualifications for membership. And the categories are open-ended. Judge Learned Hand, dissenting in Munn v. Bowers, 47 F.2d 204, 205–206 (2d Cir. 1931), cert. denied, 283 U.S. 845, 51 S.Ct. 492, 75 L.Ed. 1454 (1932), thought there was a difference between the concept of a qualification for admission and the initiation fee paid to be admitted. His view was that although ownership of shares in a club satisfied eligibility requirements, the purchase of such shares from a retiring member of the club was not an initiation fee, "which goes to the common coffer." [4]

This case calls for further development of that point. Among the reported cases, a reasonably consistent underlying rationale is discernible. Payments which have been held taxable were those made to the club, directly, United States v. Bailey, 383 F.2d 9 (5th Cir. 1967); McDonald v. United States, 315 F.2d 796 (6th Cir. 1963); Hulette v. United States, 315 F.2d 826 (6th Cir. 1963); United States v. Riverlake Country Club, Inc., 306 F.2d 564 (5th Cir. 1962); Abbott v. United States, 10 Am.Fed.Tax R.2d 6385 (S.D.Tex.1962); Dudley v. United States, 314 F.2d 805, 161 Ct.Cl. 113 1963), or indirectly, Harvey v. United States, 234 F.Supp. 887 (W.D.Va.1964); Zekind v. United States, 12 Am.Fed.Tax R.2d 6366 (E.D.Mo.1963); Carter v. United States, 12 Am.Fed.Tax R.2d 6371 (S.D.Ill.1963); Edgewood Country Club v. United States, 204 F.Supp. 508 (S.D. W.Va.), aff'd, 310 F.2d 379 (4th Cir. 1962), or if to another, in exchange for a proprietary or some other economic interest in the club. Vitter v. United States, 279 F.2d 445 (5th Cir. 1960); Wild Wing Lodge v. Blacklidge, 59 F.2d 421 (7th Cir. 1932); Munn v. Bowers, 47 F.2d 204; Knollwood Club v. United States, 48 F.2d 971 (Ct.Cl.1931). Underlying them all there are findings and theories imposing the tax on a payment within a concept of initiation fees readily understandable without resort to creative genius. It is precisely at this point that this case sharply contrasts with those decided before.

However logical in the abstract it may be to treat the amount of any payment which results in an eligibility qualification as "a payment required as a condition precedent to membership," see Edgewood Country Club v. United States, 204 F.Supp. at 515 (dictum), a realization that this would lead to absurdities in practice is exemplified by what was done in this case. Although the properties purchased by the 13 members involved here were for payments varying

---

4. The majority in *Munn* finding that no initiation fee was required "other than ownership of the shares" upheld the tax as "an excise on the privilege of joining the club."

from $2500 to $45,000 (for an average of over $12,000) the government limited its assessment to 20% of $2500. The only explanation offered by the government to justify the choice of that figure is that $2500 is the smallest price paid for a residential lot.

Where a case has called for a keen discrimination between a payment "as an initiation fee" and one which was not for that purpose such a distinction has been made. Thus, in United States v. Riverlake Country Club, Inc., 306 F.2d 564, the government's contention that the tax should be measured by the $1000 purchase price of a debenture bond of the club rather than by the regular initiation fee of $400, which a bond purchaser was excused from paying, was rejected as being "so unreasonable as not to be consistent with the plain meaning of the statute which, as we read it and its history, is to tax the full amount of that which is actually essential to and which has been given up for membership in a club, whether by payment, loan, or otherwise."

Even the Treasury would impose no additional tax measured by the value of qualifying property of a newly initiated member which was received by gift or inheritance. Rev.Rul. 58–493, 1958 Cum. Bull. 820.

*Conclusion*

■■ The government certainly has broad powers and a choice of methods to tax the privilege of belonging to a social fraternity. The statute, § 4241, imposes a tax on amounts "paid as initiation fees" (a) (2). The intended application of this statute is tolerably clear and specific. "The tax imposed by this statute is an excise on the privilege of joining a club * * * ; the measure being 10 per cent [now 20%] of the amount paid as initiation fees." Munn v. Bowers, 47 F.2d at 205. The meaning urged by the government can be attained only at the cost of leaving out the words "paid as an initiation fee."

■ "After all, legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing * * *." Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 618, 64 S.Ct. 1215, 1221, 88 L.Ed. 1488 (1944). It is often difficult to construe tax statutes in a coherent and rational way. But here it is not difficult. to understand the sense of the statutory definition of "initiation fees" required. as a condition precedent to membership. There may be a link between ownership. of residential property on the southern two-thirds of Mason's Island and membership in the Mason's Island Yacht Club, but it would be seductively misleading to decide that it was the purpose of the statute to impose a tax on the purchase price paid to acquire ownership, or even on so much of it as would have the effect of raising the initiation fee for memberships in the club from $200 to $2700 for taxation purposes. The fortuitous payment of $2500 furnishes too impressionistic a basis to be included as a coordinate element of the amount required to be paid as initiation fees upon which this tax may be imposed.

There is a first and basic distinction which must be made between different kinds of "conditions precedent to membership." The statute is concerned with a tax on dues and initiation fees. By use of the key words "initiation fees" it is clear that Congress intended to limit the application of the tax to payments made to satisfy that single particularized condition precedent.

The plaintiff's motion for summary judgment is granted.

The defendant's motion for summary judgment is denied.

The parties are directed to submit a. proposed form of judgment in accordance with this opinion within thirty (30) days..